IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-30115 |
| | ) | |
| CLARENCE EDWARD PLATO, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter came before the Court on February 26, 2009, for the sentencing hearing of Defendant Clarence Edward Plato. The Government appeared by Assistant United States Attorney Jason Bohm. Defendant Plato appeared in person and with his attorney Jon Gray Noll. On August 13, 2008, a jury convicted Defendant Plato of distribution of 50 or more grams of a mixture or substance containing cocaine base (crack), as alleged in the sole count of the Indictment (d/e 10). Jury Verdict (d/e 53); Minute entry entered August 13, 2008. The United States Probation Office prepared a Revised Presentence Report dated February 23, 2009 (PSR). Defendant Plato objected to portions of the PSR which relied on statements

1

he gave to law enforcement officials in an interview. Plato argued that the statements were given under an agreement that the statements would not be used against him. The Government denied that any agreement existed. The Court conducted an evidentiary hearing on Defendant Plato's objections and took the matter under advisement. The Court gave the parties the opportunity to submit additional briefs on the issue. <u>Minute entry entered February 26, 2009</u>. After careful consideration of the evidence and the arguments of the parties, the Court overrules Defendant Plato's objections. The Court determines that Plato's statement was covered by an oral agreement under which his statements could not be used against him. The Court, however, finds that Plato subsequently breached the oral agreement. As a result of the breach, his statements can be used at sentencing. U.S.S.G. §§ 1B1.8(a) & (b)(4).

## STATEMENT OF FACTS

On October 24, 2007, law enforcement officers arrested Plato and brought him to the Drug Enforcement Agency's (DEA) offices in Springfield, Illinois. DEA Special Agent Rick Dollus and Illinois State Police Inspector James Stewart were present. Dollus gave Plato his <u>Miranda</u> warning. Dollus showed Plato evidence that they had of him selling

2

approximately 63 grams of crack cocaine. Agent Dollus gave Plato the opportunity to cooperate with law enforcement. Dollus told Plato that if he wanted to cooperate, he would have to tell them everything he knew about illegal activity in Springfield, including his own participation. If he agreed, Dollus offered to release him at that time and allow him to cooperate with them covertly in ongoing investigations. The agents told Plato that he would help himself down the road if he cooperated. Dollus testified that they never told Plato that his statement would not be used against him.

Plato told the officers that he wanted to talk to an attorney. Plato was then being represented by attorney W. Scott Hanken in a state court matter. Dollus telephoned attorney Hanken. Dollus told Hanken that they had a case on Plato and that Plato had information that they wanted. Dollus told Hanken that he had made an invitation to Plato to cooperate or make a proffer in hopes of getting the Government to make a motion at his sentencing hearing for a reduction in his sentence. <u>Excerpt of Proceedings on February 26, 2009 (d/e 79)</u>, at 12.[1] Attorney Hanken had over 20 years experience in defending criminal matters in state and federal court. He

---

[1] A transcript of the testimony of attorney Hanken was prepared at the request of the Government. The remaining testimony at the evidentiary hearing was not transcribed.

understood that generally it was in the best interest of a defendant to cooperate with federal authorities to secure a Government motion for a sentence reduction. He also understood that the Government required individuals who make cooperation agreements to give a proffer, or statement, of everything the individual knows about illegal activity. The proffer or statement had to be truthful and complete. Hanken assumed that a written cooperation agreement had been presented to Plato, and that Plato would have signed it before he made his proffer. This was incorrect. No written agreement existed at that time.

Hanken spoke to Plato. Hanken first established whether Plato wanted to retain Hanken to represent him in this matter. Plato decided that he did not want to retain Hanken. Hanken, however, agreed to speak with Plato about his situation. Hanken told Plato that it was in Plato's best interest to cooperate. Hanken told Plato that if he cooperated he would have a chance of getting the Government to move for a sentence reduction, known as a 5K1 motion. See U.S.S.G. § 5K1.1. He told Plato that if he decided to cooperate, he would have to tell the agents everything he knew about illegal activity. He would have to be truthful and complete. Hanken told him that the statement would not be used against him. He told him

4

that cooperating would give him the chance to secure a 5K1 motion by the Government at sentencing.

After Plato talked to Hanken, Assistant United States Attorney Timothy Bass came into the interview room. Bass was at the DEA office on other business, but briefly participated in the interview. Bass stated in his Affidavit that he told Plato that the Government was willing to allow Plato to cooperate in ongoing drug investigations and that, if he desired to cooperate, that cooperation would involve releasing him from arrest and allowing him to cooperate in a covert manner under the direction and control of law enforcement agents. <u>Government Exhibit 1</u>, <u>Affidavit of Timothy Bass</u>, ¶ 7. Bass further told Plato that the Government would evaluate his cooperation once the cooperation was complete and decide whether to take his cooperation into account when the Government made a sentencing recommendation for Plato to the Court. <u>Bass Affidavit</u>, ¶ 9. Plato testified that Bass told him the statement that he gave to the agents would not be used against him. Bass denied this. <u>Bass Affidavit</u>, ¶ 9. Bass then left the room and did not participate further in the interview.

Plato then agreed to cooperate. He gave the agents a statement of his knowledge of illegal activity. Dollus testified that Plato's statement was

5

truthful and complete. The agents then released Plato. Dollus then started preparing the paperwork for a written cooperation agreement. The written agreement would have provided that Plato's statement could not be used against Plato as long as he performed his obligations under the agreement.

Plato was required to keep in contact with the agents, under their agreement. A couple of days after his release, Plato agreed to make a controlled purchase of drugs for the agents. About seven to ten days later, however, the cooperation broke down. Plato stopped making contact with the agents, and he would not return the agents' calls. After a period of time in which Plato did not cooperate, the officers re-arrested him and charged him in this case.

Plato was convicted in a jury trial. The Probation Office used Plato's proffer to hold him accountable for 1.6 kg of crack cocaine. PSR, ¶¶5, 6, 11-13, and 20. As a result, the PSR states that Plato's advisory Guideline sentencing range is 324 to 405 months. Without those statements, Plato would only be responsible for the 61.9 grams that were distributed in the offense of conviction. PSR, ¶ 9. Plato objected to the use of his statement at sentencing. He argued that his sentence should only be based on the 61.9 grams of crack distributed in the offense of conviction. Based solely

6

on the 61.9 grams, Plato's sentencing range would be the statutory minimum of 20 years. PSR, ¶ 110; U.S.S.G. Ch.5, Pt. A, Sentencing Table; 21 U.S.C. § 8414(b)(1)(A).

## ANALYSIS

The Guidelines provide that a statement may not be used at sentencing if the statement was made under a cooperation agreement which provided that statements could not be used against the defendant, except to the extent provided in the agreement. U.S.S.G. § 1B1.8(a). The Guidelines, however, also state that restriction on the use of statements in § 1B1.8(a) does not apply if the defendant breaches the cooperation agreement. U.S.S.G. § 1B1.8(b)(4).

A cooperation agreement is a contract governed by contract principles. United States v. $87,118.00 in U.S. Currency, 95 F.3d 511, 516 (7th Cir. 1996).[2] The elements of a contract are offer, acceptance and consideration. Zemke v. City of Chicago, 100 F.3d 511, 513 (7th Cir. 1996). In this case, the Government offered to: (1) release Plato from custody, (2) allow Plato

---

[2]In this context, contract principles are also supplemented by a concern that the bargaining process not violate the defendant's rights to fundamental fairness under the Due Process Clause. $87,118.00 in U.S. Currency, 95 F.3d at 517. Plato makes no claim that the bargaining process here violated any concerns of fundamental fairness. The Court, further, finds no evidence of unfairness in the bargaining process.

to cooperate with officials in ongoing drug investigations, and (3) consider the value of his cooperation in formulating a sentencing recommendation to the Court. In exchange, Plato had to agree: (1) to make a full and complete statement of his knowledge of criminal activity and (2) to cooperate in a covert manner in ongoing drug investigations.

The agreement also included an understanding that Plato's statements would be not be used against Plato. During the negotiations, Dollus told attorney Hanken that the Government made an invitation to Plato to make a proffer and cooperate. Dollus was an experienced agent talking to Hanken, an experienced criminal defense attorney. Both understood that "proffer" and "cooperation" are terms of art that contemplate an agreement in which the Defendant's statement would not be used against the Defendant in exchange for cooperation. Dollus' offer to Plato, thus, contemplated that Plato's statement made under the agreement would not be used against him. Hanken communicated his understanding of the offer to Plato. After Plato accepted the offer, Dollus started preparing a written cooperation agreement to memorialize the understanding of the parties. The written agreement was a standard agreement that included a provision that Plato's statements would not be used against him. Dollus, thus, also

8

understood that the agreement between the parties contemplated that Plato's statements would not be used against him.

Plato accepted the Government's offer and made his statement. At that point, the agreement between Plato and the Government was in effect. Plato's statement was complete and truthful. The agents accepted his performance and released him. At that point, the Government implicitly agreed not to use Plato's statements against him.

The agreement, however, also included a commitment by Plato to continue to cooperate. Bass told Plato that the Government would release Plato if he cooperated in a covert manner in ongoing drug investigations. Plato wanted to be released as part of the agreement. Dollus testified that after his release, Plato was required to keep in contact with the agents. Plato continued to cooperate for seven to ten days. He agreed to perform a controlled buy a few days after he was released. This evidence supports the finding that both parties contemplated that the agreement obligated Plato to cooperate on an ongoing basis.

Plato breached the agreement by reneging on his obligation to cooperate covertly. About seven to ten days after the agents released Plato, Plato stopped contacting the agents and stopped returning their calls. He

9

provided no further cooperation. He breached the agreement. As a result, the Guideline's restriction on the use of his statements at sentencing, set forth in Guideline § 1B1.8(a), does not apply. U.S.S.G. § 1B1.8(b)(4). The statements, thus, can be used at sentencing. The Court overrules the objection.

Plato argues that the Government should be bound by its agreement not to use Plato's statement against him. The Court agrees that the Government should be obligated to live up to its agreement with Plato as long as Plato lived up to the agreement. This is not a case where the Government agreed only to take Plato's statement and give him consideration for whatever benefit the Government received from the information. If that were the case, Plato would have remained in custody. Rather, in this case, the Government offered Plato an additional benefit; the Government offered to release Plato. The Government offered this benefit if Plato agreed to cooperate covertly in ongoing investigations. Plato wanted this benefit. He testified that he wanted to be released. To receive this benefit, he agreed to cooperate covertly. Plato received the benefit of his bargain; he was released. If Plato had lived up to his obligations, the Government would have been obligated to keep its end of the bargain.

Plato, however, breached. He reneged on his promise to cooperate covertly. His statements, therefore, can be used at sentencing. U.S.S.G. § 1B1.8(b)(4).

THEREFORE, Plato's objections to paragraphs 5, 6, 11-13, and 20 of the Revised Presentence Report are OVERRULED. The Court will determine the final advisory Guideline sentencing range at the sentencing hearing currently set for April 20, 2009.

IT IS THEREFORE SO ORDERED.

ENTER:   March 31, 2009

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE